## COLUMBIA NAT. BANK OF WASHINGTON et al. v. SHACKLETT.

(Court of Appeals of District of Columbia. Submitted January 5, 1927. Decided March 7, 1927.)

No. 4470.

Husband and wife ⬤⇒87(3)—Wife's indorsement and delivery of securities to husband for use as security for loan held not void, as making wife his surety or guarantor (Code, §§ 1154, 1155).

Where wife, to enable husband to obtain loan, indorsed and delivered stock certificate to him, to be used as security, but was not a party to transactions of husband with banks from which he obtained loans, *held*, there was no violation of Code, §§ 1154, 1155, prohibiting married woman from making any contract as surety or guarantor.

Appeal from Supreme Court of District of Columbia.

Suit by Corinne L. Shacklett against the Columbia National Bank of Washington and

others. Decree for plaintiff, and defendants appeal. Reversed, and cause remanded.

W. B. Guy and W. A. Coombe, both of Washington, D. C., for appellants.

W. C. Clephane and J. W. Latimer, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The appellee was plaintiff below and brought this suit against her husband and certain creditors as defendants. She prayed for alimony from her husband, and for a decree compelling his codefendants to surrender and deliver over to her certain securities, which she alleged were her property and were unlawfully held by the defendants as collateral for debts owing to them by her husband. The lower court entered a decree for the surrender of the securities as prayed for by the plaintiff, whereupon this appeal was taken.

The testimony below was to the effect that at the times involved in this case the plaintiff was a married woman, the wife of Lyle T. Shacklett, and was living with her husband in the District of Columbia; that she was possessed of a considerable estate of real and personal property, but her husband was without means, and willfully failed to assist in meeting their living expenses; that as part of her separate estate she owned and held a stock certificate standing in her name for seventeen shares of the capital stock of the Standard Oil Company of Kentucky; that her husband was about to leave the city to seek some business engagement elsewhere, and that she indorsed the stock certificate in blank and gave it to him, and he delivered it to Hibbs & Co., as collateral for a loan made to him by that bank; upon this subject the plaintiff testified, "I gave it [the stock] to Mr. Shacklett, and he delivered it to Hibbs & Co., for a loan because he needed the money;" that she went with him to the bank, carrying the certificate with her, and gave it to her husband, but she does not know whether he gave it to Hibbs & Co. that day or not; that he secured a loan of $1,200, for which he was given credit in his individual account, and gave the stock as collateral; that she also signed and delivered to Hibbs & Co. a writing authorizing them to dispose of the stock or the proceeds thereof in any manner which her husband might direct. The indebtedness of plaintiff's husband to the bank was never paid in whole or in part by her husband, and Hibbs & Co. still hold the stock as collateral to it. The plaintiff claims that their possession of the stock is illegal under the circumstances, because of the proviso to section 1155, D. C. Code, which prohibited married women from becoming sureties for the debt of another. Upon this ground she prayed that the stock be restored to her.

A somewhat similar transaction was stated by the plaintiff with respect to the Columbia National Bank. Plaintiff owned in her own right, 26 other shares of stock in the Standard Oil Company of Kentucky, standing in her name, which were indorsed in blank by her and transferred and delivered to her husband as a loan to him whereby he might raise some money to buy some stock he had in mind. Her husband then borrowed $4,000 from the Columbia National Bank upon his individual promissory note, and pledged the stock and other securities not now in question to the bank as security for the loan. The plaintiff testified "that she did not participate in the loan from the Columbia National Bank to her husband represented by the $4,000 note, was not present at the time it was made, but delivered the securities listed on said note to her husband at the office of the Pittsburgh-Florida Company in the Washington Loan & Trust Company Building; that all these securities were her sole and separate securities; that they were transferred by her to her husband and that she was the sole owner of them." Afterwards several partial payments were made upon the note, whereupon the plaintiff took up the residue thereof in the course of a transaction, wherein her husband directed the bank to transfer his note and the collateral to plaintiff, and authorized her to use the collateral or its proceeds as she saw fit, and the plaintiff executed her own note to the bank for $2,300 and took credit for that amount, next issuing her check to the bank for the amount remaining due upon her husband's note, and leaving the stock in question, together with certain dividend scrip owned by her, as collateral for her own note, the bank thereupon canceling her husband's note and handing the same over to her. The bank still holds the plaintiff's note, which is unpaid, except for a partial payment of $200, and also the collateral stock and dividend scrip in question. In respect to this transaction, as in that with Hibbs & Co., the plaintiff claims that the delivery of the stock to the bank was illegal and void, because prohibited by the proviso to section 1155, supra, and she prays that the stock and scrip be restored to her.

The lower court held with the plaintiff and against both defendants. The court decreed that Hibbs & Co. should deliver to plaintiff

the collateral stock held by it, and that the Columbia National Bank should likewise deliver to plaintiff the hypothecated stock and dividend scrip held by it, and that the plaintiff should surrender to the latter bank the canceled note in the possession of her husband, which plaintiff had taken up as stated. This decision was based by the lower court upon the opinions of this court in Waters v. Pearson, 39 App. D. C. 10, Fisk Rubber Co. v. Muller, 42 App. D. C. 49, and Schwartz v. Sacks, 55 App. D. C. 87, 2 F.(2d) 188.

We think the decree of the lower court was erroneous. Sections 1154 and 1155, D. C. Code, provide in general that married women shall have power to dispose of their separate property, by deed, mortgage, gift, or otherwise, as fully as if unmarried, but that no married woman shall have power to make any contract as surety or guarantor, or as accommodation drawer, acceptor, maker, or indorser. In Waters v. Pearson, supra, it was held by this court that a married woman may show, in defense of an action to recover rent reserved in a lease under seal, that, although formally contracting as a joint principal, she really did so as surety for her husband and another signing with her, who were the real principals, and that her act was void under the proviso in section 1155, D. C. Code. In Fisk Rubber Co. v. Muller, supra, it was held that a contract entered into by a married woman as surety, to indemnify another and save him harmless from the default of one whom the latter appointed his agent, is void under section 1155, D. C. Code, and that she was entitled to recover certain shares of stock which she had hypothecated as collateral to the contract. In Schwartz v. Sacks, supra, it was held that a promissory note signed by a married woman as surety for her husband was void under section 1155, D. C. Code, and that a deed of trust upon her separate real estate, executed concurrently therewith, to secure the payment of the note, was also void, whether in the hands of the payee of the note or his assignee. It was argued by the creditor that the statutory provision which prohibited a married woman from making any contract as surety for another, left her free nevertheless to dispose of her separate property as if unmarried, and consequently that a deed of trust executed by a married woman to secure a note which she signed as surety for her husband

would be valid, notwithstanding that her signature to the note would be in violation of the statute and therefore void. This court, affirming the decree of the Supreme Court of the District, held against that claim, and ruled that in such case the married woman's note and her deed of trust securing it were alike obnoxious to the statute and void.

We think, however, that these cases are not applicable to the facts appearing in the instant case. The plaintiff in this case was not a party to either of the transactions whereby the several banks made the loans to her husband and received the collateral stock from him. She assumed no liability whatever with respect to her husband's debts, either as surety, guarantor, accommodation drawer, acceptor, maker, or indorser. Nor did she pledge her property as security for any such executory obligation. It is true that the stock which was hypothecated by her husband had been owned by her, but before it was pledged to the bank the plaintiff had indorsed and transferred it to her husband and delivered it into his possession. This she had a full right to do, and for the purposes of the transactions between her husband and the banks the stock in question was at the time of the hypothecation his stock and not plaintiff's, and she did not "make any contract as surety or guarantor" with the bank or with her husband. This is none the less true because plaintiff knew beforehand that her husband intended to raise money upon the stock, for she was entitled to give him the stock, regardless of the purposes for which he may have intended to use it. This conclusion is not affected by the fact that the loan made to the husband by the Columbia National Bank was later taken up by the plaintiff, and her own note given in payment of it. The status of the stock as valid collateral in the hands of the bank was then already established.

We think, therefore, that the decree of the lower court was erroneous. It is reversed, with costs, and the cause is remanded for further proceedings not inconsistent herewith.

It is proper to add that the proviso in section 1155, D. C. Code, prohibiting married women from becoming sureties, has since been repealed by Act of Congress approved May 28, 1926 [44 Stat. 676].

Reversed.